Your Honors, may it please the Court, there were three fundamental errors in the District Court's order and judgment, in this case denying or dismissing Petitioner's habeas corpus petition. Each of these errors independently, and certainly when considered cumulatively, compel reversal of the District Court's judgment in this case. The first issue, Your Honor, as Your Honors are aware, is the issue with respect to the purported Miranda violation. The State Court's decision in this matter, determining that Petitioner did not invoke his right to have counsel present during the custodial interrogation because his questions and his statements made to the detective in this case regarding an law objectively unreasonable. Under what law? Under both federal law and state law, Your Honor. We don't care about state law in a habeas case, do we? That's correct. Under federal law, under the law of this circuit in U.S. v. Chile in particular, in McNeil v. Wisconsin Supreme Court Authority, under those cases, as well as Alvarez v. Gomez cited in the opening brief, a case very similar to this one as far as the statements and questions that were actually made by the Petitioner, under that law, the law of this circuit in the Supreme Court, the — We don't even care about the law of this circuit, do we? To the extent, Your Honor, that the Court is determining whether or not the District Court erred in finding that the State Court's decision was not contrary to clearly established federal law, that's correct, because it is United States Supreme Court authority that applies. But however, both in terms of examining whether or not the inquiries made, in terms of whether or not the statements made by the Petitioner were, in fact, statements that might have been considered sufficient to invoke the right to counsel, certainly there is persuasive authority in this circuit that the District Court could properly look at, and this Court can look at, in determining whether or not the District Court erred in basically summarily dismissing the — this claim in the Petition. Well, Your Honor, you have to find a Supreme Court case that the State Court so badly misconstrued that it becomes an unreasonable application. And I — and we believe we have. What is that case? That case is McNeil v. Wisconsin. It's not a case, Your Honor, that — the case of McNeil v. Wisconsin in 1991 by the United States Supreme Court, it's not that that's a case necessarily where the facts of the statements made or the questions raised by the Petitioner were similar to this case. The point is that in that case, and in a long line of Supreme Court authority, the Court has consistently stated that the invocation of the right to counsel, number one, is very distinct from the invocation of the right to remain silent. And that in order to invoke the right to counsel, what is required under Supreme Court law is simply at a minimum some statement that can be reasonably construed as the expression of a desire to have counsel present. And it's the Petitioner's contention, Your Honor, that under that authority, the District Court's review of the State Appellate Court's decision was error. Doesn't it have to be unequivocal? I'm sorry, Your Honor? Doesn't it have to be unequivocal? Yes, it certainly does. Well, he — Mr. Paulino made some comments about where's the lawyer, that sort of thing, and then he said, but I want to talk to you, Detective. He did indeed, Your Honor. Is that ambiguous? It's not ambiguous with respect to the request. It's not ambiguous, period. And the main — Your Honor has touched on what we perceive to be the main problem really in both the State Appellate Court and in the District Court's reasoning in this or decision in this case on the Miranda claim, and that is that there was kind of a merging, for purposes of considering the claim, there was a merging of the very distinct rights of right to counsel and right to remain silent. It was clear that Petitioner wanted — desired to speak to Detective Felix. It was — he made — he was unequivocal about that. He executed a written waiver of his right to remain silent. He wrote at the bottom, I want to talk to you, to Detective Felix. He told him specifically he desired to talk to him, but in what we would contend are no — are very unequivocal terms, at least under the Supreme Court authority, and obviously we're not — we're dealing with — laypersons were dealing with a suspect, a defendant, in the context of a custodial setting interrogation, not a particularly educated man. So the clarity of the statements and the requests under all of the cases is not — obviously it's not required that he say, I want an attorney here. There are many other statements. You say obviously, but what's obvious about that? Well — The Supreme Court has said unequivocal, and one way of construing unequivocal might be the way the Ninth Circuit has, and that's to say, well, we sort of account for the fact that the guy is not too smart and probably doesn't have much of an education, and we have gone quite a ways in our cases in construing things unequivocal, and they hardly seem unequivocal to me. I'm just sort of reading them. But why isn't another reasonable interpretation of unequivocal unequivocal? It means I want a lawyer. Simply because — Yes. Why isn't that a reasonable interpretation of what the Supreme Court has said? Because the Supreme Court's standard as articulated in Wisconsin and prior to that and remains the law today, that is that an unequivocal statement is simply a statement that can be reasonably construed as an expression of a desire to have an attorney present. And typically, just as a matter of practical matter, typically the cases are not such that most of the defendants or individuals state it so clearly. Obviously — The State Court has a fair amount of room to maneuver as it evaluates this whole passage here where he says, where's the attorney? Well, I'm going to ask you a question. Okay, I want to talk to you, but I want to know what's going on. And then I want to talk to you, Detective Felix. The State Court could reasonably determine that whole passage is at most an ambiguous suggestion and certainly isn't unambiguous calling for a lawyer, is it? Which is what the State Court did, in fact, fine, Your Honor, but — Isn't that a reasonable construction of Federal law? It's not a reasonable construction for two reasons. Number one, because the statement, again, the statement, I want to talk to you, Detective Felix, that, although it needs to be considered in context, certainly that statement is a statement, again, that relates distinctly to the decision to waive his right to remain silent. He was willing to waive that right and he did. That is his statement and his written waiver. I want to talk to you. I don't want to remain silent. I want to talk to you. He desired to. He gave a full confession that night, you know, which is what law enforcement obviously are hoping for in a circumstance like that. But — Okay, so we put aside I want to talk to you, Detective Felix. It doesn't hurt you. It doesn't help you. Let's assume that that's the case. Where is the unequivocal statement? Well, it's two things. The unequivocal statement, and again, I want to emphasize, Your Honor, is that in terms of the consideration given to the statement or statements, all of the law consistently, the cases consistently hold that, of course, it's a totality as well, it's a totality consideration. In other words, there are a few statements or questions raised, number one. So repeatedly he says, where's the attorney? Where's the attorney? When he was told you can have an attorney present, he says, where's the attorney? This is just — Why couldn't that be reasonable construed as just a wondering, where's the attorney? Well — I'm not a wondering attorney, but, gee, I thought there would be an attorney here. I don't see one. The reason, specifically, Your Honor, is that perhaps standing alone, those questions could be reasonably construed by the state court as unequivocal — I mean, equivocal, perhaps standing alone. But what we have here that I think really puts — makes the distinction here or brings this case into the realm of cases where the court should find that, in fact, it was equivocal is that, additionally, we have a written waiver executed by the Petitioner where he specifically checks each of the boxes indicating that he waives his rights to remain silent, et cetera. But the one right that he does not waive, that is not the box that is not checked, is his right to have an attorney present during that questioning. That's the same exact circumstance present in one of the cases that I referred to of this circuit where the defendant, again, did not execute — But there's a difference between not waiving the right and invoking the right. That is true. And I thought what we needed was an affirmative invocation for them to stop questioning. If he doesn't waive the right, the failure to waive the right is not a signal to stop questioning. That's true, Your Honor. But, in fact, here, questioning itself had not really — or the interrogation had not really begun. So we're not dealing with a situation where there was a potential invocation and then subsequently, you know, by his statements, there's — the court is asked to consider whether or not he subsequently invoked his right. I mean, where there was a waiver and then a subsequent invocation. We're dealing with a situation where he signs a written waiver as to his rights, but specifically the detective has this waiver in front of him, and it's clear that he has not at least affirmatively waived that right. He's then informed of his right orally. And in response to that, he says, where is the attorney? Where is the attorney? And he said, well, he's not here.  So the lack of a specific waiver, it should have been clear to the officer at that time, at a minimum. How about the next sentence? Well, I'm just asking a question, man. Do you want to talk to me, says Felix. Paulino says, okay, I want to talk to you, but I want to know what's going on. Where, Your Honor, in a situation like that, an untrained, uneducated man, under the circumstances of being suspected of a serious crime, where he wants to confess, he wants to talk, he wants to do the right thing, yet — and he's being asked, well, do you want to talk? Do you want to talk? He wants to talk. Again, it's a big distinction between the desire to admit to the crime, to provide the information required, but he doesn't understand, and it's not made clear enough to him under the circumstances of the lack of waiver and then the questions raised. Detective Felix should have, and this Court has said, although not required, clarifying questions are advised, are appropriate, and under these circumstances, clearly Detective Felix should have at least followed up as far as what he meant by, well, where is the attorney? You mean it's going to take him a long time? And under those circumstances — There's a federal case that says that. The federal case law says that, no, it says that there is no absolute obligation. May I make a suggestion? You might want to — Yeah, move on, yes. I will, Your Honor. But I'm interested in the Batson issue. Yes, Your Honor. Save some time for that. Under the Batson issue is perhaps what we believe a clear error on the part of the district court in this case, and that is that the district court in dismissing the petition presumed, as it's stated expressly, presumed that the State court had used the correct legal standard in analyzing the issue on appeal in State court as to whether or not Petitioner had made out a pronofacial case of discrimination. Were there strikes of five out of six potential jurors? Is that right? Yes, Your Honor. Five of the six African Americans were — had been stricken by the prosecutor. And the State appellate court used the wrong standard. The State court applied Wheeler, the Wheeler standard, which is no — it's clear that no longer is that acceptable, and there's no analyzing it in any of these courts' recent decisions. It's clear that this Court, the Supreme Court, has stated that under — that the Batson standard, which is a more stringent standard, is the appropriate standard. It needs to be a strong likelihood, not just an inference of discrimination. The State court applied an inference of discrimination. And then the district court, in reviewing it, said, presuming that that is the correct standard, we will then apply a standard of review in reviewing that decision of deference. We will look at it, and that's exactly what the district court did. And that was error. The district court was required, since the State court applied the wrong legal standard, not to give a presumption of correctness and to basically rubber stamp it. Have an evidentiary hearing. An evidentiary hearing, exactly, Your Honor. And what would happen there? The prosecutor would come in? Or what do you envision would happen at this hearing? At an evidentiary hearing? What I envision, Your Honor, would be that the prosecutor would come in, that there would be, ideally, it would be testimony or at least introduction of the State court transcript from both the motion made in court from State court, but better. That's already a record, isn't it? That's true, Your Honor. But there would be testimony, basically. Can't we just look at that ourselves? What? The full record? Can't we review that record ourselves to see if Batson was complied with? You can, Your Honor. And we would submit that if, in fact, Your Honors do do that, that it would be we would ask that you do that because it would be abundantly clear that there was certainly error here by the State court in that the trial court basically imposed its own reasoning. What did the district court do with respect to that in this case? The district court said, well, since, assuming they applied the right standard, we're going to presume it's correct. And, therefore, we presume it's correct. The district court. Your point is that the district court made no independent review. No independent. Notwithstanding there was no evidentiary hearing, not even a. . . Not even an independent review, Your Honor. And we would ask that this court order that at least that independent review be made because the trial court here, it's clear from the record before the district court that the trial judge in this case didn't even didn't apply the right standard. And in doing that then said, well, I see reasons why to exclude those jurors and, therefore, didn't even require the burden shifting to the prosecutor. You know, one thing I noticed about that, though, I didn't see the defense lawyer saying, thanks a lot, Judge, but it's not your opinion that counts. It's the prosecutor's subjective reasons that matter. It looked like the defense lawyer at the time of the State trial acquiesced in this process by which the judge identified reasons. Am I wrong about that? Well, I believe, Your Honor, that respectfully that that's not correct in terms of an acquiescence. He didn't say, Judge, I object to your giving reasons. I'd like to hear what the prosecutor has to say. Frankly, Your Honor, in reading the transcript several times, it doesn't appear, and this was obviously during that he was really given the opportunity. The judge, if you recall, was pretty adamant about the fact that he. . . It seems to me the judge said something like this is what I think about juror number one and number eight and this one who's nude sunbathing and this one was this and this one was that. And then he said, do you have any reaction to this? I mean, it didn't seem to me he was being overbearing or stifling the defense counsel. All defense counsel said was five out of six. You know, statistically, it's a problem. I never saw where the defense lawyer says, Judge, I object to your giving the reasons or I respectfully request that you demand the prosecutor to give the reasons. I don't know that he said those exact terms. Or prevented it in any way from being made, that kind of objection. I don't. . . I don't argue that he did anyway. I'm sorry? You never said in the briefs that the judge prevented that. That's correct. I guess what I'm wondering is if there, you know, if you're right, we have a couple of options. Option one would be to set it back for a hearing where the prosecutor would. . . He tried the case in 19. . . Ninety. . . Ninety-two. . . Anyway, come in and try to explain why she struck her at number eight, you know, ten years after the fact. That's one option. Another option would be to say, you know, the judge didn't do this the way it was supposed to have been done, but defense counsel never really made a contemporaneous objection to this procedure. He should have said, Judge, I want to hear from the prosecutor. It's not. . . It's her reasons, not your reasons, that matter. Well, number one, Your Honor, we would submit that under the law, a contemporaneous objection was in fact made. Despite the fact that perhaps the prosecutor didn't then follow up later and say, but Your Honor, your opinion does not matter, the prosecutor did respond to some of the judge's comments with respect to why those reasons, he believed, were not sufficient. But in addition to that or beyond that, Your Honors, it's such a — the jury selection and the issue as to whether or not there's an unbiased jury or whether or not there has been a selective choosing, so to speak, or racially motivated eliminating of jurors is so fundamental to petitioner's rights to a fair trial here, it's so fundamental to his due process rights that even if he didn't follow up in the way that Your Honor has indicated, number one, he made the objection. And even had he not, I believe the cases say that where there's a due process violation of that type of a magnitude, this Court is certainly that the Court's willing to consider the claim without an objection. If this case goes back to Judge Tavrizian, we say you have to have a hearing. The prosecutor comes in and says, you know, all those reasons the judge gave on the record, those were my reasons exactly. And if Judge Tavrizian believes her, does the Batson issue then go away? Is that the end of it? It shouldn't, Your Honor. I mean, under an — Are you saying you don't want a hearing? You want an outright reversal based on — I mean, ideally, Your Honor, and really what — in order to correct what was really a miscarriage of justice, what potentially seriously flawed the proceedings would be a new trial. Based on the five out of six? Is that your point? Well, although that wouldn't be conclusive if the trial were happening today and that were the evidence that were presented, under the law, under Federal law, five of six is a sufficient number to establish that at least to create that presumption that the burden would shift. Prima facie? Exactly. The prima facie case. The fact that under the law he made a prima facie case out and under the circumstances, as Your Honor has explained, of the reality of what would happen in an evidentiary hearing later in time today and what Judge Tavrizian could really be in a position to determine or not, really, that that wouldn't probably benefit or correct, remedy the defect because the prima facie case was made and because the error occurred and the error was of a magnitude that it infected the trial. It basically resulted in a violation of Petitioner's right to a fair trial. In light of that, the remedy, really the only appropriate remedy, would be a new trial. Okay. Thank you. Thank you. Thank you, Your Honor. May it please the Court. My reading of the record on the Batson issue is a little bit different. It seems to me that what the magistrate did was point out that the California Court of Appeal had relied on the strong likelihood standard. And then in a footnote indicated that on account of that, the review before the Federal District Court would be de novo. And then the Court, although endorsing the reasoning of the Court of Appeal. Well, if we do de novo, then what do you have a problem? We have the first step is you have to make a prima facie showing. Yes. Pretty clear there was a prima facie showing here, 5 out of 6. I wouldn't agree. Why? Well, because I don't think you can make a prima facie showing based purely on arithmetic. We're only talking about a prima facie showing. We're not talking about final determination. Yes. But I think even that, I think as the magistrate pointed out, is that even insofar as the inquiry is only as to prima facie showing, it nevertheless has to be an inquiry into all of the circumstances, including explanatory circumstances. But there's no explanation here. Well, I think the prosecutor here never explained. The judge explained. Yes. But so what? Well, I think what you haven't got is any neutral explanation on the part of the prosecutor. It's just not on the record. Well, we don't. I mean, you agree that if we think there's a prima facie showing, then there was error. No, because I think there are obstacles. If there was a prima facie showing, if we disagree with you and we look at it and say there's a prima facie showing, assuming that there aren't obstacles that would prevent the Court from reviewing the question de novo, yes. But if the Court, if this Court can review a de novo and finds a prima facie showing, yes, then I have a big problem. What's the obstacle? Well, I think there are two. One is that it seems to me that what the magistrate did was make a de novo determination that there was no prima facie case. And that determination on appeal should be reviewed under the clear error standard on appeal with deference. So the magistrate judge says state court applied the wrong standard. I make a determination that there is a prima facie showing. Yes. Okay. So we've got... That there isn't a prima facie. There is no prima facie showing. Yes. So now you have a finding of fact by the district court that on appeal is reviewed for clear error deferentially. And what did the magistrate judge, how did the magistrate judge conclude there was no prima facie showing? Well, again, I think he essentially endorsed the reasoning of the state court opinion. But he nevertheless concluded... Let me just... I'm sorry. Let me just... He says that... Just to make sure we're under... Yes. We have a disagreement about whether there was prima facie showing or not. Yes. Whether or not we can make it or whether the magistrate judge was right. But we are agreed, you and I, are we not, that if we look at the record and find there was a prima facie showing, then that's the end of the case. We have to vacate because the prosecutor never would have rebutted it. There's no evidence from the prosecutor about the prima facie showing. It hinges entirely on the prima facie showing. Yes. If we conclude there was a prima facie showing, we have to vacate and grant a new trial. No. No, because I think, like Judge Silverman pointed out, I think there can be a remand. But, again, I want to make... Yes. In which case, we get back to the question that was raised by Judge Silverman. What are we going to hear? Yeah. Well, I mean, you might hear the prosecutor. Prosecutors will often have notes of their reasons. A prosecutor might be able to reconstruct... This was seven or eight years ago. I think it was 1997. I don't think it's the best of all results, even if there's a finding of a... even if there's a de novo finding. But I want to make... This procedure that the state court employed is really bizarre, for the state court to sit there and make the prosecutor's case. No, I don't think so. I think... No. In Batson itself, the Supreme Court talks about the Prima Facie case being dependent on a consideration of all the circumstances, including the explanatory ones. And this Court, in Tolbert v. Page... Explanatory ones that are not even offered by the prosecution? Well, I think if they're explanatory, if they're within the site and the precipient experience of the district judge, the cases say, in looking at the Prima Facie question, you look at demeanor, you look at whether the prosecutor is questioning witnesses in different ways because of the race, whether the prosecution's questions are indifferent, and what the answer is. Well, what the judge here did is said, well, I can imagine reasons why the prosecutor would have struck. That's very different from saying... I mean, that's the kind of thing that you put in as a rebuttal. Well, you can. Not in determining the Prima Facie showing. Well, again, I think in Batson, as quoted in Tolbert, there is a specific reference to the Prima Facie showing being dependent on explanatory circumstances.  In Batson, the Court, on appeal, having decided that the State fact-finding wasn't didn't merit deference, made its independent de novo finding, and still looked at the answers that the challenge juror gave and decided that they would have supported a challenge. So I don't think there's anything, certainly there's nothing clearly established and nothing that dictates the result in the Teague v. Lane sense that a judge in making the Prima Facie determination cannot look at the demeanor, the answers, the conduct of the voir dire, even though if and when you get to Stage 3, there might become a question of whether or not they were, in fact, the actual subjective reasons of this particular prosecutor. One of the fallacies of that argument is we really don't know who else was left on. I mean, the judge says juror number 13 has a son who's in prison, and there's really no exploration about other people who were left on the jury and whether she was the only one who had a son in prison or the juror who had a conviction for the nude sunbathing. The judge has come up with reasons that could theoretically explain why someone would want to challenge that juror, but there's no, the second half of the equation is, and furthermore, there were not other people on the panel similarly situated. Well, I mean, I think there was a clear opportunity for the defense at the time the trial judge made the factual findings to question whether or not they were supported by the voir dire answers of the jurors and also to point out, if it were true, that other jurors who were not struck gave different answers. Well, so what? This is not direct appeal. Well, when you look at the waiver, if you want to rely on that as a procedural bar, it would have had to have been invoked in state court. So the fact they didn't object doesn't matter to us unless it is raised as a procedural bar. This is federal habeas. This is not direct appeal. Actually, I think the failure to object can count for more than just a procedural bar. I think under Teague, it can count as an element of the prima facie showing of a Batson claim. In other words, as an element of the Batson claim under federal law, a contemporaneous objection. So but... But where do you get that? Well, I cite in my brief, there's a case called Ward v. Whitley out of the Fifth Circuit that talks about contemporaneous objection as being an element of the Batson claim under federal law independent of any procedural bar. And I think to the extent that what we have going on here also, I think, is a situation where the defendant... It sounds mighty strange to me. Well... They may have said it. Did they hold it? Yes. Yes. I believe they did. And I checked again this morning. It looked to me like they drew the distinction quite consciously and explained why. And again, this is a situation where what the defendant did was make a quote-unquote Wheeler objection. And now is kind of relying on Wade v. Teague to presume that the trial judge actually invoked the wrong standard to get out of the presumption of correctness box. In other words, Batson and Wheeler do not say the same thing. Yes. And in fact, the U.S. Supreme Court granted cert on a case called Johnson v. California that's going to be argued in March. And the issue is this precise issue, whether or not the California rule, the California interpretation of Batson is correct, whether or not in showing a prima facie case, you have to make out this strong likelihood, i.e., you have to show that it's more probable than not that there's racial discrimination going on, as opposed to the mere inference. So that's the issue in Johnson, and I believe it's going to be orally argued, I think, in the end of March. But following further through on Your Honor's question, you know, even in the district court, the defense petitioner didn't present anything more than what was before the state court judge. Well, if, I mean, if they had an argument about other, for example, other jurors not being subjected to the same sort of questioning, not being subjected to the same standards, that was an argument they could have fairly presented to the state court and exhausted and then presented to the district court. But you don't have that. So that's why. And again, I don't think that there's any. Why is it their burden? They've shown five out of six. Well, again, that's, I think, the assumption there. And then you come back and say, well, it's five out of six, which clearly is disproportionate. But here we've got all these really good explanations. They kept off the lady whose kid was in prison. Well, again, I think. There was no one else who was left on the jury that was in a similar situation. Well, I think the assumption to Your Honor's scenario there is that, again, that the five out of six operates as a matter of law to create the prima facie case. And that's, I think. And doesn't that shift the burden? No, I don't think so. I think, again, I think the prima facie case has to be a function under the Supreme Court standards of review of all the circumstances. I think if that rule is converted into a kind of a per se subrule, that if there's a certain arithmetical rate of excusals, then you have a per se prima facie case. I think that changes the entire nature of the Batson rule. And that, I think, would be barred by Teague and wouldn't be supported by clearly established law. So I can't agree with Your Honor's premise that simply the showing of the five of six, without any consideration of all the circumstances, does legally establish as a matter of law a prima facie case. What about five out of six plus the prosecutor never offered a reason? Well, I don't think, I don't think, I don't think that's a, that's a fair criterion when there's been no request. You know, under, under the procedure as set out. No objection, you mean? No, I think if the judge, if the trial judge finds no prima facie case, I think the prosecutor kind of operates that as peril if he starts proffering reasons that later on are going to be deconstructed. So I think if there's no, if there's no finding of a prima facie case that would put the burden on the prosecutor to actually come forward with the, with the subjective reasons, I don't think the absence of volunteering of those reasons really should play a role in the, in the calculus. There are other, there are other factors, you know, that within the judge's perception. You know, race of the defendant, race of the victim. How the, what, what, what the, what the questions of the, of the jury were. What the demeanor of the jury was. These are all things that could have been brought to the judge's attention. The judge made note of some of them. They're supported by the record. There was no dispute that they were accurate. There was no suggestion made, either in the trial court or in the district court, that there were other facts to be brought to bear on this. The argument all the way has been five out of six. Five out of six. Well, five out of six, I think, as a matter of law, can support habeas relief because of, because of Teague and because of the clearly established rule. I should also point out, in preparing for the argument, Fernandez v. Roe wasn't cited in the briefs. And it's, I looked at that and that's a case where this court seems to have relied extremely heavily on the, on the math, on the arithmetical showing. So I think it doesn't survive the Teague argument. And I think there's also a question about whether or not Fernandez, like Cooperwood, Cooperwood and like Wade, really should be applied in this case to, to nullify the presumption of correctness that normally would be accorded to the trial judge's findings. But I wanted to bring Fernandez to the Court's attention because it wasn't briefed and it is, I must confess, it is heavily reliant on numbers only. But it's a post-finality. But it's a post-finality decision. So that's why I think the Teague rule would operate if it were deemed to be controlling. Thank you very much. I'm not familiar. I haven't read Fernandez, Your Honors. I would suspect that that might be a case looking at the, not the prima facie case, but in fact whether or not purposeful discrimination had been established. But regardless of that, Your Honor, under the law of this circuit and in fact in Turner, this circuit specifically held in that case that showing a 5 out of 9, exclusion of 5 out of 9, was sufficient to support an inference to make the prima facie case. And what we're talking about here is whether or not having made that prima facie case, the burden appropriately shifted, as it should have under Batson, and it did not. And the, in this case, Your Honors, the judge, the trial court in this case, in fact, in imposing its own view as to what the reasons were in taking that opportunity or that obligation away from the prosecutor, that is where the violation was here. That is where the error with respect to the law under Batson is. It's not with respect necessarily even to whether or not a prima facie case showing was made, or a prima facie showing was made. Here, what happened was the judge did not even give the defendant the, did not require, excuse me, the prosecutor to state, articulate his reasons. So if that would mean, Your Honors, that if in fact the prosecutor specifically were to say, I excluded that individual because they're African American, that is my reason. The very crux of Batson, emotional, racial motivation, the crux of Batson, had it been that that was the reason, it wouldn't matter because the judge then imposes objective reasons. Is that it, Your Honors? Thank you. We'll next hear argument in Marks v. Lambert.
judges: Kozinski, O'scannlain, Silverman